IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:08CR354 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| LAURA ADLER, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's objections, Filing No. 32, to the report and recommendation ("R&R") of the magistrate judge, Filing No. 30, on the defendants' motions to suppress statements and evidence, Filing No. 16. The defendant is charged with possession with intent to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, 21 U.S.C. §841(a)(1) and (b)(1). Filing No. 1, Indictment.

Under 28 U.S.C. § 636(b)(1)(C), the court makes a de novo determination of those portions of the report and recommendation to which the parties object. *United States v. Lothridge*, 324 F. 3d 599, 600-01 (8th Cir. 2003). The court has conducted a de novo review of the record and exhibits, including the transcript of the suppression hearing, the exhibits and a videotape of the traffic stop at issue. Filing No. 29, Hearing Transcript ("Hr'g Tr."); Filing No. 25, Exhibit ("Ex.") List, Hr'g Ex. 5 (videotape). The court generally agrees with the magistrate judge's recitation of the facts, but finds error in the magistrate judge's application of the law to the facts. The court finds the defendant's objections to the R&R should be sustained and the defendant's motion to suppress should be granted.

**I.      Background**

The testimony adduced at the suppression hearing shows that this case involves a "ruse" checkpoint for drug interdiction.  Hr'g Tr. at 8.  Nebraska State Patrol officers post signs indicating that there is a vehicle check ahead with a drug dog in use and then watch a nearby interchange to observe the vehicles that exit the freeway.  *Id.*  The defendant, Laura Adler, exited the highway at an exit past the posted signs and was observed by Nebraska State Patrol Trooper Cory Townsend. *Id.* at 9-10.  He testified that he observed the defendant's vehicle approach the stop sign at the end of the exit ramp and come to a stop.  *Id.* at 10.  He estimated that the vehicle was stopped for approximately three seconds when the driver signaled a left turn, turned left and proceeded North.  *Id.* at 10, 29  Trooper Townsend testified that he believed that defendant's actions violated Neb. Rev. Stat. § 60-6,161(2).[1]  *Id.*

---

[1]That statute, which governs turning and signaling provides:

> (1) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in sections 60-6,162 and 60-6,163 [hand and arm signals and signal lights].
> (2) A signal of intention to turn or move right or left <u>when required</u> shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.
> (3) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in such sections to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.
> (4) The brake and turnsignal lights required on vehicles by section 60-6,226 shall not be flashed on one side only on a disabled vehicle, flashed as a courtesy or do pass signal to operators of other vehicles approaching from the rear, or flashed on one side only of a parked vehicle except as may be necessary for compliance with this section.

Neb. Rev. Stat. §60-6,161 (emphasis added).

He conducted a traffic stop and advised the defendant that she had been pulled over for failing to signal her turn 100 feet before the intersection. *Id.* at 11. Trooper Townsend admitted that he did not observe anything else that was erratic in the defendant's driving. *Id.* at 26. He further admitted that there was no other traffic around the defendant's car and that the defendant's failure to signal in advance of the turn did not create a danger to anyone. *Id.* at 36-37.

The Nebraska Drivers Manual was admitted into evidence at the hearing. Filing No. 25, Ex. List, Hr'g Ex. 101. The manual provides: "Always signal when: changing lanes; pulling in or out of a parking space; pulling into traffic from a parking area or alley; and then, signal at least 100 feet before turning, or moving right or left." *Id.*, Ex. 101 at 45; *see* Hr'g Tr. at 31. The manual also contains an illustration that shows a left or right turn light or hand signal for turning left or right, respectively, and brake lights to signal or slowing. *Id.* Ex. 101 at 45. The manual also states that for turning, a driver should: "always plan ahead," "be in the proper lane well in advance of a turn," and "signal the direction of the turn." Ex. 101 at 46. *Id.*; *see* H'rg Tr. at 31-32.

In her motion to suppress, Adler contended that the Trooper Townsend did not have probable cause to stop her vehicle and also asserts that the government has not shown that the drug dog's indication was reliable. The magistrate judge found that the traffic infraction furnished probable cause for the stop. Adler objects, *inter alia*, to the magistrate judge's conclusion that the stop was a legal stop. She contends that failure to signal a turn 100 feet in advance of an intersection is not an infraction if a vehicle is not moving on a roadway and turns from a stop at an intersection.

3

## II.  Discussion

Although a pretextual stop violates the Fourth Amendment, any traffic violation, regardless of its perceived severity, is enough to establish probable cause sufficient to permit a police officer to stop the driver of a vehicle. *United States v. Mallari*, 334 F.3d 765, 766-67 (8th Cir. 2003); *see United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008). "Courts are not to consider the motive for a stop as long as the reason for the stop is valid." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). The subjective intentions of an officer making the stop are irrelevant for the purpose of determining the validity of the stop. *Whren v. United States*, 517 U.S. 806, 813-14 (1996). As long as an officer is doing nothing more than he is legally permitted and objectively authorized to do, his actual state of mind is irrelevant for purposes of determining the lawfulness of the stop. *United States v. Alcantar*, 271 F.3d 731, 736 (8th Cir. 2001); *Wright*, 512 F.3d 466, 471 (8th Cir.2008) (noting that an otherwise constitutional traffic stop is not invalidated by the fact that it was mere pretext for a narcotics search.).

However, courts apply an objective reasonableness standard to determine "whether a traffic stop was based on probable cause or was merely pretextual." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). An officer has an objectively reasonable basis for stopping a motorist where the officer has a reasonable basis for believing that the driver has breached a traffic law. *Mallari*, 334 F.3d at 766. The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time. *See Arizona v. Evans*, 514 U.S. 1, 17 (1995) (O'Connor, J., concurring).

If an officer makes a traffic stop based on a mistake, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake was "objectively reasonable." *United States v. Washington,* 455 F.3d 824, 827 (8th Cir. 2006). "A traffic stop based on a mistake of law or fact does not violate the Fourth Amendment if the officer's mistake in initiating the stop was objectively reasonable. *United States v. Sanders,* 196 F.3d 910, 913 (8th Cir. 1999). Nevertheless, "[t]here may be occasions when an officer's understanding of the law is simply unreasonable. In such a case, of course, the officer's belief that there is a traffic violation would not be sufficient to establish probable cause to stop the vehicle." *Id.* at 913 n.3.

A checkpoint program whose primary purpose is to detect evidence of ordinary criminal wrongdoing contravenes the Fourth Amendment. *City of Indianapolis v. Edmond,* 531 U.S. 32, 41-42 (2000) (noting that a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment). "Ruse" checkpoints have been approved as a law enforcement tool, but the requirement of individualized suspicion of criminal activity has not been relaxed in such situations. *Compare United States v. Yousif,* 308 F.3d 820, 829 (8th Cir. 2002) (finding a drug interdiction checkpoint an unconstitutional violation of Fourth Amendment rights), *with United States v. Williams,* 359 F.3d 1019, 1021 (8th Cir. 2004); *United States v. Martinez,* 358 F.3d 1005, 1008-09 (8th Cir. 2004) (both approving stops for traffic violations in connection with a ruse checkpoint). A vehicle's exit just beyond posted checkpoint signs is not sufficient, standing alone, to justify a seizure, although it may be considered as one factor in the totality of circumstances. *United States v. Carpenter,* 462 F.3d 981, 986 (8th Cir. 2006); *Yousif,* 308 F.3d at 827-28 (noting that exiting under such circumstances does not create an *individualized* reasonable suspicion

5

of illegal activity and finding a quantum of individualized suspicion only after a stop occurs cannot justify the stop itself). A traffic stop following a ruse checkpoint is approved only if probable cause exists. *Williams*, 359 F.3d at 1019. Although exiting a highway in response to a ruse checkpoint warning may be suspicious, "the suspicion engendered is insufficient for Fourth Amendment purposes," and "probable cause, the *sine qua non* of which is individualized suspicion" must be present to justify a subsequent search or seizure. *See id.*

Under Nebraska law, a left-turning motorist has the duty not to turn unless and until the movement can be made with reasonable safety. *Huntwork v. Voss*, 525 N.W.2d 632, 635 (Neb. 1995). One turning left must exercise reasonable care under all of the circumstances. *Id.* The Nebraska Rules of the Road provide that a "signal of intention to turn or move right or left <u>when required</u> shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning." Neb. Rev. Stat. §60-6,161(2) (emphasis added). Nebraska law also provides that "no person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided." Neb. Rev. Stat. § 60-6,161(3). The "manner provided" is either an appropriate hand signal or turn indicator light for turns and brake lights for stops. Neb. Rev. Stat. §§ 60-6,162, 60-6,163.

The duty of giving a warning or signal by a driver has reference to the intention of the driver as to the movements of his vehicle. *Southwestern Gas & Elec. Co. v. Brown*, 197 F.2d 848, 853 (8th Cir. 1952). If a driver intends to stop or seriously slacken the speed of his car, he should give a signal; if he intends to turn his car either to the right or to the left, he must so signal. *Id.* (applying Arkansas law). In Nebraska, a leading driver must

6

exercise due care not to turn, slow up or stop without adequate warning of his intention to do so to the driver of the vehicle following. *Weir v. Simmons*, 357 F.2d 70, 74 (8th Cir. 1966) (approving jury instruction).

"Nebraska law prohibits turning a vehicle or moving right or left upon a roadway without an appropriate signal." *State v. Chronister*, 526 N.W.2d 98, 103 (Neb. App. 1995); Neb. Rev. Stat. §§ 60-6,161 to 60-6,163.  The statute requiring a signal before turning has been enforced in situations that involve either failing to signal at all at or between intersections or failing to signal 100 feet before a lane change or a movement from a direct course while moving.  *See, e.g., United States v. Burtton*, 2008 WL 2705492, *2 (D. Neb. July 9, 2008) (failure to signal a turn); *United States v. Dortch*, 2008 WL 3485162, *2 (D. Neb. Aug. 7, 2008) (failure to signal a turn); *United States v. 2004 Silver Chevrolet Minivan*, 2007 WL 1797644, *3 (D. Neb. June 20. 2007) (failure to signal lane change within 100 feet); *United States v. Robledo,* 185 Fed. App'x 556, 557 (8th Cir. 2006) (unpublished opinion) (failure to signal turn within 100 feet of moving back into lane after passing); *State v. Dupre*, 2006 WL 2987000, *1 (Neb. App. Oct. 17, 2006) ( failure to signal while merging into another lane); *State v. Kinney*, 572 N.W.2d 383, 385 (Neb. App. 1997) (failure to signal while merging into highway); *State v. Chronister,* 526 N.W.2d at 101 (exiting interstate highway without signaling). Without deciding whether a failure to signal 100 feet in advance of a return to the original lane after passing was a violation of Neb. Rev. Stat. § 6,161, the Eighth Circuit Court of Appeals has held that it was objectively reasonable for an officer to have believed so.  *Robledo*, 185 Fed. App'x at 558-59.  Notably, that case involved a moving vehicle.  *Id.*

7

**III.     Analysis**

The constitutionality of the traffic stop in this case depends upon whether Trooper Townsend's expressed belief that Ms. Adler had violated a traffic law by failing to signal her turn 100 feet in advance of coming to a full stop at an intersection and then signaling her turn was objectively reasonable.  The court finds it was not.  The evidence shows that the defendant approached an unfamiliar intersection, came to a complete stop, signaled, and then executed a turn.  These facts do not support a finding that Adler breached a traffic law.  Nor would it have been objectively reasonable for Trooper Townsend to believe that she did.  The court can find no state or federal case that interprets Neb. Rev. Stat. § 60-6,161 to require a signal 100 feet in advance of a turn when turning after a complete stop at an intersection.  The "signal in advance" requirement has not been applied in circumstances such as these.

By its terms, the 100-feet requirement applies to signaling only "when required." Neb. Rev. Stat. § 60-6,161(2).  Read in the context of the other "rules of the road," it is apparent that the purpose or function of the signaling statutes is to warn other motorists of a vehicle's next move.  Therefore, under one component, brake lights must be applied before stopping or slowing.  Neb. Rev. Stat. § 60-6,161(3).  The driver's manual sets out the common-sense situations wherein a signal is required for turning: "always signal when: changing lanes; pulling in or out of a parking space; pulling into traffic from a parking area or alley; <u>and then</u>, signal at least 100 feet before turning, or moving right or left."  Filing No. 25, Ex. List, Ex. 101, Nebraska Driver's Manual at 45 (emphasis added).  The common sense understanding of the qualifier "and then" is that the rule that follows is applicable to vehicles moving on the roadway—having "pulled into traffic" or wishing to change lanes.

It defies both logic and the language of the "when required" proviso in the statute to assume that the statute contemplates an obligation to signal 100 feet in advance when approaching an intersection to fully stop before a turn. The statute imposes such a duty only on drivers changing the course of a moving conveyance.

The court finds that Trooper Townsend's belief, even if sincere, that Ms. Adler's actions violated traffic laws, is not objectively reasonable. Trooper Townsend candidly admitted that his suspicions were aroused by Adler's exit just beyond the "ruse" posting. Although that suspicion may be reasonable, it does not supply the individualized suspicion to justify a traffic stop. *See Yousif*, 308 F.3d at 828 (noting that exiting after a ruse checkpoint is also consistent with innocent behavior "such as wanting to avoid the inconvenience of being stopped or because it was part of their intended route.").

The court finds that the traffic stop violated the defendant's Fourth Amendment right to be free from an unreasonable seizure and the defendant's motion to suppress should be granted. In light of this determination, the court need not address the defendant's other contentions.

IT IS ORDERED:

1. Defendant's objection (Filing No. 32) to the report and recommendation of the magistrate judge (Filing No. 30) is sustained;

2. Defendant's motion to suppress (Filing No. 16) is granted.

DATED this 30th day of March, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge